## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL TIMLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08-3218-CV-S-GAF-SSA** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff, Michael Timlin, filed an application for disability insurance benefits made under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, *et seq*. Plaintiff's application was denied initially. On February 25, 2005, after a hearing, an administrative law judge (ALJ) issued a decision finding Plaintiff was not "disabled" as defined by the Social Security Act. However, on August 11, 2005, the Appeals Council of the Social Security Administration remanded Plaintiff's case for further consideration by the ALJ. The Appeals Council instructed the ALJ to further consider evidence related to Plaintiff's psychological limitations.

After further development of the record and a new hearing, on September 19, 2007, the same ALJ issued a decision again finding that Plaintiff was not disabled. On April 10, 2008, the Appeals Council denied Plaintiff's request for further review. Thus, the ALJ's decision is the final decision of the Commissioner.

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than

a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Finch*, 547 F.3d at 935 (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)). A court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted). The Eighth Circuit has further noted that a court should "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). The Supreme Court in *Barnhart v. Walton*, 535 U.S. 212 (2002), upheld the Commissioner's interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for twelve months.

The Commissioner's regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims. *See* 20 C.F.R. §§ 404.1520 and 416.920 (2006). In the first three steps of the process, the ALJ must determine whether Plaintiff is engaged in substantial gainful activity, whether he has a medically determinable impairment that is "severe" under the meaning of the Act, and

whether Plaintiff suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* A claimant must establish that he is not able to return to his past relevant work at step four of the sequential evaluation process. *See, e.g., Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). If Plaintiff makes such a showing, the burden of production shifts to the Commissioner to show that he can perform work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520 and 416.920 (2006). The Commissioner may meet this step five burden by relying on the medical-vocational guidelines (guidelines) or vocational expert testimony.[1]

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period, and that he had severe impairments under the meaning of the Act, including degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, a major depressive disorder, post-traumatic disorder, a history of poly-substance abuse disorder, and personality disorder. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled any impairment found at 20 C.F.R. pt. 404, subpt. P, app. 1 (2008). After further evaluating the record as a whole, including Plaintiff's complaints, treatment records, and physicians' advice, the ALJ formulated Plaintiff's residual functional capacity (RFC), defined as the work Plaintiff could still perform despite his limitations. Among the limitations found by the ALJ were that Plaintiff could not lift more than fifteen pounds, and that he should avoid more than occasional activities such as reaching overhead and bending. Plaintiff could not climb or balance, and he could not stand and/or walk

---

[1]Upon review of the record and the law, the Defendant's position is found to be persuasive. Much of the Defendant's brief is adopted without quotation designated.

3

more than four hours per day, or for more than 30 minutes at a time. The ALJ also found that Plaintiff had psychological limitations. For example, he found Plaintiff could not engage in frequent or prolonged interaction with co-workers or the public; and he could pay attention to only routine and/or repetitive tasks. He could not sustain a high level of concentration or precision. He also could not cope with high-stress situations, such as fast-paced activity, explicit production deadlines, and/or schedules, or changing work settings. Based on this RFC, the ALJ found Plaintiff could not perform any of his past relevant work at step four of the sequential evaluation process. However, at step five, and with the help of a vocational expert, the ALJ determined Plaintiff retained the ability to perform other work found in significant numbers in the national economy, including jobs as an office helper and gate guard. The ALJ therefore found Plaintiff was not disabled at step five of the sequential evaluation process.

The primary question for the ALJ was not whether Plaintiff experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent him from performing substantial gainful activity. *See McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996). The Commissioner may discredit subjective complaints if there are inconsistencies in the evidence on the record as a whole. *See, e.g., Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). In both physical and mental testing, the ALJ found that Plaintiff appeared to be consciously exaggerating his subjective complaints. The ALJ also noted Plaintiff's treatment history for back pain and pointed out that many of the doctors who had examined him had opined that he retained work capacity similar to the RFC selected by the ALJ. Finally, the ALJ acknowledged that Plaintiff's treating physician had opined Plaintiff had disabling limitations, but that he could not defer to the doctor's opinion given the lack of medical support for his conclusions.

4

Plaintiff first argues that the ALJ "ignored" his duty to assign controlling weight to the opinion of his treating physician, Dr. Olive. Dr. Olive had treated Plaintiff beginning in 2002, for back pain, and had performed surgery for Plaintiff. He later rendered a medical source opinion statement that indicated, among other limitations, that Plaintiff was capable of lifting no weight at all. Plaintiff emphasizes that Dr. Olive was a specialist, and that the doctor had actually performed surgery on him on more than one occasion. He also argues that the ALJ arbitrarily assigned greater weight to other medical opinions, without sufficiently explaining his rationale.

Generally speaking, the Commissioner's regulations explain that a treating physician's opinion is due "controlling weight," if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (internal citations omitted)). However, the ALJ may not defer his decision-making authority to a treating physician: "[a]lthough a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). For example, when a treating physician's notes are inconsistent with his or her RFC assessment, it is not due controlling weight. *See Hacker*, 459 F.3d at 937. The Commissioner need not assign controlling weight to a treating physician's opinion that is not supported by medically acceptable laboratory and diagnostic techniques, or is inconsistent with the other substantial evidence of record. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(2)).

5

In this case, the ALJ declined to defer to Dr. Olive's opinion. The ALJ acknowledged that Dr. Olive had treated Plaintiff, and that he had opined that Plaintiff could perform less than the full range of work. However, the ALJ questioned the doctor's response to his request for further information. In a letter, the ALJ had asked Dr. Olive why he had suggested such profound restrictions on Plaintiff's activities. The letter specifically asked Dr. Olive for the objective medical basis for his opinion. However, Dr. Olive indicated that he did not have an objective basis for his opinion. Rather, he wrote that Plaintiff had "informed him that these types of activities would cause severe pain and I have no reason to doubt his word." In other words, Dr. Olive cites no basis for his opinion other than Plaintiff's own subjective complaints.

Dr. Olive's own treatment notes suggested that he believed Plaintiff retained greater work capability than his medical source statement form. For example, despite having performed surgery on Plaintiff's back in January 2003, Dr. Olive told Plaintiff he should consider returning to work at some sort of sedentary desk job. While Dr. Olive performed further surgery on Plaintiff, the doctor's treatment notes continued to show little support for his later opinion. In fact, Dr. Olive noted that Plaintiff had new complaints of hip pain in June 2003, but his treatment notes indicated Plaintiff nevertheless "appear[ed] very comfortable" while walking. He also told Plaintiff in 2003 that he had reached maximum medical impairment. Given the lack of clinical supporting evidence, it was appropriate for the ALJ to decline to defer to Dr. Olive's opinion. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("The ALJ was entitled to give less weight to Dr. Harry's opinion, because it was based largely on Kirby's subjective complaints rather than on objective medical evidence.").

Plaintiff also contends the ALJ failed to acknowledge the opinion of Dr. Lee, a consultative doctor who examined Plaintiff in August 2003, and who opined that Plaintiff was "totally disabled." The ALJ noted that Dr. Lee had opined Plaintiff was disabled, but he did not refer to the opinion because it was conclusory, and was not controlling on the Commissioner. This was a proper basis for the ALJ to decline to defer to a medical opinion, particularly considering that Dr. Lee was a one-time examiner. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").

Plaintiff next claims that the ALJ did not evaluate Ms. Dickey's report, a functional capacity evaluation that he claims shows that he cannot lift more than ten pounds. Actually, the ALJ did make note of Ms. Dickey's report. Ms. Dickey concluded that Plaintiff appeared to be consciously exaggerating his physical limitations. She noted that Plaintiff did not give maximum effort, and that he appeared to be attempting to control the test results. She cautioned that Plaintiff's test results represented the amount of effort he was willing to expend, not his true work capacity. She plainly stated that Plaintiff's "actual functional capacity is higher than what the test suggested." Therefore, not only did the ALJ correctly consider Ms. Dickey's functional capacity test result, the test further supported the ALJ's concerns regarding Plaintiff's credibility.

Finally, Plaintiff also contends that the ALJ did not sufficiently evaluate the opinion of Dr. Halfaker, a psychologist who examined him as part of his workers' compensation case, and who suggested that he had "marked" impairments in his social functioning and adaptation, and a "moderate" impairment in his activities of daily living. However, the ALJ pointed out, like Ms.

Dickey, Dr. Halfaker's report showed some irregularities suggesting Plaintiff may not have given full effort during testing. While Dr. Halfaker did not conclude that his test reports were invalid, the ALJ correctly observed that the report appeared to further reduce Plaintiff's credibility, especially when considered in light of Ms. Dickey's report.

Furthermore, there is other evidence of Plaintiff's psychological functioning in the record, which portrayed him as much less limited than Dr. Halfaker's report. Dr. England, who testified at Plaintiff's hearing, pointed out that Plaintiff was not under psychiatric treatment at the time of Dr. Halfaker's examination of him, and that Plaintiff improved with treatment with Paxil by Dr. Ferreri. Indeed, in a March 2007 consultative examination, Dr. Akeson noted that Plaintiff appeared essentially normal, and that he correctly performed simply cognitive tasks and social functioning questions during an examination.

Plaintiff also contends the ALJ overlooked relevant evidence when he formulated Plaintiff's residual functional capacity (RFC). He also contends that the ALJ did not sufficiently describe how he derived Plaintiff's RFC. To the contrary, the ALJ's decision provides sufficient discussion to allow the Court to determine his rationale in assessing Plaintiff's RFC.

First, there was considerable evidence of Plaintiff's physical RFC consistent with the ALJ's assessment. Treatment notes from Dr. Ferrari, who treated Plaintiff in more recent years, indicated that his anxiety was "well-controlled" with medication, and that his back pain was "fairly well controlled." Plaintiff also underwent a number of consultative examinations that supported the ALJ's RFC assessment. For example, in 2004, Dr. Woodward examined Plaintiff and noted that he appeared to be able to move about relatively well. He concluded that Plaintiff could lift up to thirty pounds, and stand/walk a maximum of four hours per day. These findings

8

were consistent with and supported the ALJ's RFC. Indeed, the physical portion of the RFC, which only allowed lifting up to fifteen pounds, was considerably more restrictive than the limitations suggested by Dr. Woodward.

The ALJ also utilized consultative psychological examinations and medical expert testimony in formulating the mental portion of Plaintiff's RFC. As noted above, in March 2007, Dr. Akeson noted that Plaintiff appeared essentially normal, and that he correctly performed simple cognitive tasks and social functioning questions during an examination. Dr. England, who testified at Plaintiff's hearing, pointed out that Plaintiff appeared to have had improved anxiety symptoms after beginning medications with Dr. Ferreri, and suggested to the ALJ that he would be able to perform simple work as long as he was not asked to have excessive contact with co-workers or the public. Limitations consistent with both Dr. Woodward's and Dr. England's opinion appear in the ALJ's RFC.

The Eighth Circuit has noted the ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); *See also Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000) (citations omitted). In this case, there was sufficient support for the ALJ's assessment of Plaintiff's RFC.

Having formulated Plaintiff's RFC, the ALJ determined that Plaintiff could not perform any of his past relevant work. Because Plaintiff had proven that he could not perform his past relevant work at step four, at step five the burden shifted to the Commissioner to produce evidence of some other type of substantial gainful employment Plaintiff could perform given his

9

RFC. *See Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000). *See also* 20 C.F.R. § 416.920(f) (2000).

The ALJ relied on a vocational expert to determine what jobs existing in the national economy could be performed by an individual of the Plaintiff's age, education, past relevant work experience, and RFC. The ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, education, skill level, and work history could perform any work in the national economy if she shared Plaintiff's RFC. The vocational expert answered, and the ALJ found, that Plaintiff could perform work found in the national economy, including jobs as an office helper and gate guard, with more than 200,000 jobs available nationally. "A vocational expert's response to a hypothetical question provides substantial evidence where the hypothetical question sets forth with reasonable precision the claimant's impairments." *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992).

In his final argument, Plaintiff contends the ALJ failed to meet his burden at step five. He claims that the vocational expert actually testified that he could not perform jobs like gate guard and office helper if her were unable to tolerate working with others. However, under further questioning by the ALJ, the vocational expert confirmed that a person who could tolerate "brief" and "superficial" interaction with others would be able to perform the named jobs. This testimony was entirely consistent with the ALJ's finding that Plaintiff could not tolerate "frequent or prolonged" interaction with others and that he was "only able to engage in brief, superficial interaction with the public."

Plaintiff also contends that the vocational expert testimony impermissibly conflicted with information about the jobs found in the Dictionary of Occupational Titles (DOT). He argues

10

that, under Social Security Ruling 00-4p, the DOT overrules the vocational expert testimony.

Plaintiff's interpretation of the ruling is incorrect. Social Security Ruling 00-4p requires first, "as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether there is . . . consistency" between the vocational expert's definition of a given job and the DOT definition of the same job, and then "if the [vocational expert's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." SSR 00-4p, pp. 2-3. Notably, the ruling specifically states neither the vocational expert nor the DOT "trump" the other.

In this case, the ALJ specifically noted that it appeared the vocational expert testimony varied from the DOT, and he asked the vocational expert for the basis of his vocational testimony. The vocational expert testified that he relied on his own professional experience. This is an entirely proper explanation under the ruling. *See* SSR 00-4p (valid vocational information may be derived "from a VE's or VS's experience in job placement or career counseling.").

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: May 12, 2009